UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                 Case No. 24-cr-20562
                                                     Hon. Brandy R. McMillion
                                                     Magistrate David R. Grand

SHAWN PATRICK SMITH,

    Defendant.
_____/

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY RELEVANT TO THE LAWYER'S RULES OF PROFESSIONAL RESPONSIBILITY**

1

As the Government states, this is a tax case. The anticipated Expert Witness Opinions filed by the Government, (Exhibit B to the Motion in Limine), is an explanation of the law surrounding lawyer's trust funds. The opinions specifically speaks to when a lawyer's fees are "earned." Each of the proposed opinions of the expert has the word "earned" or "earnings," except for Opinion No. 7, and that opinion is not relevant to any of the facts in issue.

"As a general rule, funds that a taxpayer receives in trust for another person are not includable in the taxpayer's gross income." *Canatella v. Commissioner*, T.C. Memo. 2017-124, 113 T.C. M. (CCH) 1549, 1553, citing *Ford Dealers Advert. Fund, Inc., v. Commissioner*, 55 T.C. 761, 771 (1971), aff'd, 456 F.3d 255 (5th Cir. 1972). <u>The tax law determines</u> when the fees are income to the lawyer because only <u>when the lawyer has earned that fee</u> without substantial limitation on his right to the funds, does that money becomes income to the lawyer. Even if the lawyer does not take the money out of the trust account, once the lawyer has a *right* to take the fees because he earned the fee, i.e., he has done the work, the lawyer is deemed to have constructively received that money and it is income. See, *Miele v. Commissioner*, 72 T.C. 284, at 290 (1979). The doctrine of constructive receipt requires taxation of income which is subject to the taxpayer's unfettered command and which he is free to enjoy at his own option even though he chooses not to. *Corliss v. Bowers*, 281 U.S. 376, 378 (1930).

Consequently, an attorney is not free to enjoy the use of advance fees until he or she earns them and they are not income until that time. *Miele,* 72 T.C. at 290.

Defendant has not challenged the Government's expert's qualifications because it is not yet settled on what she is going to testify to. And, there's the problem. Right now, the expert is going to testify about how an attorney, under the Michigan Rules of Professional Conduct, is "supposed " to handle trust funds. The Michigan Ethic opinion RI-69, holds that "If a lawyer-client relationship is terminated before all services are rendered but after payment of a fixed fee, the lawyer shall refund any portion of the fee which has not been earned."  This is, as the tax cases have held, a substantial limitation on the lawyer's right to the money, and funds paid to the lawyer are not "earned" until he or she renders their services to the client.

According to the Tax Court in *Miele,* 72 T.C. at 291, it does not matter if a taxpayer keeps advance fee money in a trust account or takes it out, the fees become income when they are earned. The Government's expert, in testifying how the funds handled with respect to the Michigan Iolta trust account depends on when the fees are earned, comes too close to testifying how the jury should decide the main issue in this case, i.e., what fees were earned and thus, income.

Whether fees are earned (and thus are income), does not depend on whether the fees are placed in a trust account or in a personal or business account. The only fact that determine whether a lawyer has earned fees is whether he or she has performed the contracted services.  Testimony about trust accounts and the rules surrounding when an attorney is to put money into a trust account or a personal account, based on earnings, will confuse the jury. The Tax Court held in *Miele* that when the fees are placed in the lawyer's general account does not matter for the purpose of determining when fees become  reportable income. *Meile*, 72 T.C. at 291.  What is relevant to determine income is when "all the events defining the [lawyer's] right to [the amount of the fee]" occur. *Id*.

The Government has to show that Defendant underreported his income (i.e., earned fees).  It cannot prove that by looking at what did or did not get deposited into Defendant's trust or personal accounts . This is shown by the *Meile* case.

Bank deposit cases, as stated by the Government, are used to determine the amount of income a taxpayer receives in a normal income tax case. But, the Government, by citing *U.S. v. Moody,* 339 F.2d 161 (6th Cir. 1964), makes it sound too simple. Perhaps, for taxpayers who are not lawyers,the bank deposit method of determining income may be appropriate, but here it clearly is not.

4

In *Jacobs v. Commissioner*, 1974 TC Memo 73, 33 TCM (CCH) 379 (1974), the Tax Court spoke to the indirect method of determining income in the Sixth Circuit. In that case, a Toledo lawyer was accused of underreporting income based on a bank deposit method when the lawyer was admittedly using client funds from his lawyer's trust account for personal expenditures. Although the lawyer was not accused of embezzling funds, the Government treated the trust funds a source of taxable expenditures. *Id*., at 387. This was wrong.

*Jacobs* pointed out that the Court of Appeals for the Sixth Circuit has "long been attuned to the dangers inherent in indirect methods of proof. "33 TCM (CCH), 379, at 388. In *Polizzi v. Commissioner*, 265 F.2d 498, 502 (6th Cir. 1959), (a civil case), the Sixth Circuit said that the court has to be very cautious to make sure that the procedure to determine income is fair. The Government is not allowed to base its determine on a "strong underlying element of guess work." *Id.*

In *Jacobs*, the Government had conceded that client funds used for personal expenditures were not misappropriations, embezzlements, conversions or any other form of taxable income. 33 TCM (CCH) at 386. *Id*. However, because the Government did not eliminate the possibility that client funds were attributed to the lawyer as income, the Tax Court found that the Government had not proved its case and ruled against the Government. *Id*., at 387.

5

In the instant cease, the Government, like it did in *Jacobs,* is only showing that Defendant received money from clients and put that money into his personal account.  Then, using guesswork, it attempts to show that fee deposits into the personal account is income, even though, for a lawyer, just showing, (like the Government did in *Jacobs)*, that money is put into a lawyer's personal account does not prove income.  It really does not show anything relevant in the instant case.  The fee money  has to be earned before it is income and just because it is received under a "nonrefundable" fee agreement, that does not mean that the money is already earned.  The contracted for legal services still have to be performed so that the client cannot demand a refund.

Where money *should* be deposited, either in a trust or a business account, or even where the money was deposited , is irrelevant to determine whether fees are earned (i.e., contracted for services performed), and therefore income. A lawyer's advance fee is always subject to being refunded to the client if the lawyer does not perform the services contracted for. "If any portion of the retainer is unearned because it is paid in advance for legal services to be performed in the future on an hourly, flat, or percentage basis, the retainer has not been earned and it is not a nonrefundable retainer."  Michigan Lawyer Ethics ruling. RI-69.  The ruling cited to *Baranowski v. State Bar,* 593 P.2d 613 (Cal. Supreme Court 1979).  The court in that case, in footnote 4, pointed out if the fee is paid for the performance of a

6

particular legal service, the fee is not earned until the service is performed. Therefore, just because the lawyer and client might call a fee "nonrefundable," it is still refundable. A duck is still a duck, even though it is called a horse. A fee is only nonrefundable if the fee is not made contingent on the future provision of specific legal services.[1]

The issue before the jury is not whether Defendant properly put in or took out fee money in the proper bank account. The issue is <u>when</u> Defendant earned those fees, as that is the point the fees become income. The jury is bound to become confused and prejudiced over whether fees deposited into Defendant's personal account must have been "earned" given the expert testimony. It is a simple way to determine whether a fee is "earned" and lets the Government off the hook to prove that the fee was actually income.

There is nothing in the proposed opinion testimony that is relevant. The testimony sets forth the expert's interpretation of the law. "Legal conclusions do not qualify as expert opinions. *DeMerrell v. City of Cheboygan*, 206 F.App'x 418, 426 (6th Cir. 2006). Experts are to testify regarding facts. *See, Berry v. City of*

---

[1] For example, a t "nonrefundable" fee agreement of Defendant read "non-refundable engagement fee to answer the lawsuit and attempt resolution of the civil lawsuit related to the above loan guaranteed by the above individuals." Services still had to be performed.

*Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994).  The Government's expert will have the jury believe that anytime an attorney puts a fee into his personal account, that money is "earned." The definition of "earned" is something very specific in tax law when it comes to lawyer fees.  It is when the services are performed.  The expert's testimony will tell the jury what conclusion to reach.

When a lawyer is to deposit fees into a trust account is unclear.  This is the statement of Michigan's Supreme Court as it intends to "address gaps in the existing rules and clarify attorneys' ethical duties relating to safekeeping client or third -person property and managing trust accounts."  (Attached Exhibit A, Michigan Supreme Court Order dated November 6, 2024, especially Concurring opinion, page 15) The Michigan Supreme Court is going to amend the Michigan Rules of Professional Conduct.  It is going to scrap the current rules and write new ones because things are unclear. The Government's expert would only add to this confusion.

The motion should be granted.

February 7, 2025                              /s/ Joseph Falcone

                                            Joseph Falcone (P25727)
                                            Attorney for Defendant
                                            Post Office Box 250
                                            Hamburg, MI 48139
                                            248-357-6610
                                            jf@lawyer.com