Exhibit A

# Order

**Michigan Supreme Court**
**Lansing, Michigan**

November 6, 2024

Elizabeth T. Clement,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden,
Justices

ADM File No. 2022-19

Proposed Amendments of Rules
1.15 and 1.15A and Proposed
Additions of Rules 1.15B and
1.15C of the Michigan Rules
of Professional Conduct

_____

The Court, having given an opportunity for comment in writing and at a public hearing, again seeks public comment regarding the proposed amendments of Rules 1.15 and 1.15A and proposed additions of Rules 1.15B and 1.15C of the Michigan Rules of Professional Conduct regarding IOLTA accounts.  During the initial comment period, the Court received comments on the original proposal that would modernize the rules, address gaps in the existing rules, and clarify attorneys' ethical duties related to safekeeping client or third-person property and managing trust accounts.  The Court has revised the proposal and is interested in receiving additional comments, especially regarding the proposed revision of subrule (c) of Rule 1.15 of the Rules of Professional Conduct as well as the proposed comment that accompanies that subrule, both of which would address legal fees and expenses that have been paid in advance of services rendered.

On order of the Court, this is to advise that the Court is considering amendments of Rules 1.15 and 1.15A and proposed additions of Rules 1.15B and 1.15C of the Michigan Rules of Professional Conduct.  Before determining whether the proposal should be adopted, changed before adoption, or rejected, this notice is given to afford interested persons the opportunity to comment on the form or the merits of the proposal or to suggest alternatives.  The Court welcomes the views of all.  This matter will also be considered at a public hearing.  The notices and agendas for each public hearing are posted on the Public Administrative Hearings page.

Publication of this proposal does not mean that the Court will issue an order on the subject, nor does it imply probable adoption of the proposal in its present form.

[Additions to the text are indicated in underlining and
deleted text is shown by strikeover.]

Rule 1.15  Safekeeping Property.

(a)    Definitions.

(1)     ~~"Allowable reasonable fees" for IOLTA accounts are per check charges, per deposit charges, a fee in lieu of a minimum balance, federal deposit insurance fees, sweep fees, and a reasonable IOLTA account administrative or maintenance fee. All other fees are the responsibility of, and may be charged to, the lawyer maintaining the IOLTA account. Fees or charges in excess of the interest or dividends earned on the account for any month or quarter shall not be taken from interest or dividends earned on other IOLTA accounts or from the principal of the account.~~

(2)     ~~An "eligible institution" for IOLTA accounts is a bank, credit union, or savings and loan association authorized by federal or state law to do business in Michigan, the deposits of which are insured by an agency of the federal government, or is an open-end investment company registered with the Securities and Exchange Commission authorized by federal or state law to do business in Michigan. The eligible institution must pay no less on an IOLTA account than the highest interest rate or dividend generally available from the institution to its non-IOLTA customers when the IOLTA account meets the same minimum balance or other eligibility qualifications. Interest or dividends and fees shall be calculated in accordance with the eligible institution's standard practice, but institutions may elect to pay a higher interest or dividend rate and may elect to waive any fees on IOLTA accounts.~~

(3)     ~~"IOLTA account" refers to an interest- or dividend-bearing account, as defined by the Michigan State Bar Foundation, at an eligible institution from which funds may be withdrawn upon request as soon as permitted by law. An IOLTA account shall include only client or third person funds that cannot earn income for the client or third person in excess of the costs incurred to secure such income while the funds are held.~~

(4)     ~~"Non-IOLTA account" refers to an interest- or dividend-bearing account from which funds may be withdrawn upon request as soon as permitted by law in banks, savings and loan associations, and credit unions authorized by federal or state law to do business in Michigan, the deposits of which are insured by an agency of the federal government. Such an account shall be established as:~~

        (A)     ~~a separate client trust account for the particular client or matter on which the net interest or dividend will be paid to the client or third person, or~~

        (B)     ~~a pooled client trust account with subaccounting by the bank or savings and loan association or by the lawyer, which will provide for~~

3

~~computation of net interest or dividend earned by each client or third person's funds and the payment thereof to the client or third person.~~

~~(5)     "Lawyer" includes a law firm or other organization with which a lawyer is professionally associated.~~

~~(b)     A lawyer shall:~~

~~(1)     promptly notify the client or third person when funds or property in which a client or third person has an interest is received;~~

~~(2)     preserve complete records of such account funds and other property for a period of five years after termination of the representation; and~~

~~(3)     promptly pay or deliver any funds or other property that the client or third person is entitled to receive, except as stated in this rule or otherwise permitted by law or by agreement with the client or third person, and, upon request by the client or third person, promptly render a full accounting regarding such property.~~

~~(c)     When two or more persons (one of whom may be the lawyer) claim interest in the property, it shall be kept separate by the lawyer until the dispute is resolved.  The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.~~

(a~~d~~)     A lawyer <u>must</u>~~shall~~ hold property <u>and funds</u> of clients or third persons <u>that is in a lawyer's possession</u> in connection with a representation separate from the lawyer's own property<u> and funds</u>.  All client or third-person funds <u>must</u>~~shall~~ be <u>kept in a client trust account in accordance with MRPC 1.15A</u>~~deposited in an IOLTA or non-IOLTA account~~.  Other property <u>must</u>~~shall~~ be identified as such and appropriately safeguarded. <u> Complete records of such account property and funds must be kept by the lawyer and must be preserved in accordance with MRPC 1.15B.</u>

~~(e)     In determining whether client or third person funds should be deposited in an IOLTA account or a non IOLTA account, a lawyer shall consider the following factors:~~

~~(1)     the amount of interest or dividends the funds would earn during the period that they are expected to be deposited in light of (a) the amount of the funds to be deposited; (b) the expected duration of the deposit, including the likelihood of delay in the matter for which the funds are held; and (c) the rates of interest or yield at financial institutions where the funds are to be deposited;~~

(2) ~~the cost of establishing and administering non-IOLTA accounts for the client or third person's benefit, including service charges or fees, the lawyer's services, preparation of tax reports, or other associated costs;~~

(3) ~~the capability of financial institutions or lawyers to calculate and pay income to individual clients or third persons; and~~

(4) ~~any other circumstances that affect the ability of the funds to earn a net return for the client or third person.~~

(b~~f~~) Except as otherwise provided in these rules, only client or third-person funds may be held in a trust account. A lawyer may deposit or retain the lawyer's own funds in a client trust account for the sole purposes of:

(1) opening an account;

(2) maintaining a minimum balance to prevent account closure; or

(3) paying or avoiding a financial institution's~~only in an amount reasonably necessary to pay financial institution service charges or fees or to obtain a waiver of~~ service charges on that account~~or fees~~.

The lawyer must only deposit or retain their own funds under this subrule in an amount reasonably necessary for each allowable purpose.

(c) Unless otherwise provided by these rules, a lawyer must deposit into a client trust account unearned legal fees and funds for expenses that have been paid in advance of services rendered or the incurrence of expenses, which only can be withdrawn by the lawyer as fees are earned or expenses incurred. Funds belonging to the lawyer must be withdrawn from the client trust account within a reasonable time after the fee is earned and the client has been billed and a reasonable time to dispute the bill has passed, or the client otherwise has agreed to the payment of the bill from their funds in the client trust account. A lawyer and a client or prospective client may agree in an unambiguous writing that a retainer fee or fee paid in advance of services rendered will be considered nonrefundable and earned upon receipt; a lawyer may deposit a fee paid in accordance with such an agreement into a lawyer's operating account instead of the client trust account provided that the client or prospective client is also provided a document setting forth the fee to be charged in advance of the attorney accepting the payment. An agreement for delivery of legal services for a fee paid in advance may provide that certain portions of the fee are earned by the lawyer based upon the passage of time, the completion of certain tasks, or any other basis mutually agreed upon by the lawyer and client.

5

(d)  Upon receiving property or funds in which a client or third person has an interest, a lawyer must promptly notify the client or third person.  Except as stated in this rule or otherwise permitted by law or by lawful agreement with the client, a lawyer must promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive.  Upon request by the client or third person, the lawyer must promptly render a full accounting regarding such property or funds.

(e)  When in the course of representation, a lawyer is in possession of property or funds in which two or more persons, one of whom may be the lawyer, claim interests, the property or funds must be kept separate by the lawyer until the dispute is resolved. The lawyer must promptly distribute all portions of the property or funds of which the interests are not in dispute.

(f)  A lawyer must not pay operating or personal expense directly from a client trust account.

(g)  Legal fees and expenses that have been paid in advance shall be deposited in a client trust account and may be withdrawn only as fees are earned or expenses incurred.

(h)  No interest or dividends from the client trust account shall be available to the lawyer.

(i)  The lawyer shall direct the eligible institution to:

(1)  remit the interest and dividends from an IOLTA account, less allowable reasonable fees, if any, to the Michigan State Bar Foundation at least quarterly;

(2)  transmit with each remittance a report that shall identify each lawyer for whom the remittance is sent, the amount of remittance attributable to each IOLTA account, the rate and type of interest or dividends applied, the amount of interest or dividends earned, the amount and type of fees deducted, if any, and the average account balance for the period in which the report is made; and

(3)  transmit to the depositing lawyer a report in accordance with normal procedures for reporting to its depositors.

(j)  A lawyer's good-faith decision regarding the deposit or holding of such funds in an IOLTA account is not reviewable by a disciplinary body.  A lawyer shall review the IOLTA account at reasonable intervals to determine whether changed circumstances require the funds to be deposited prospectively in a non-IOLTA account.

Comment:

**Fiduciary Role.**  The obligations of a lawyer under this rule apply only when the lawyer is rendering legal services.  For example, a lawyer who serves only as an escrow agent in a transaction, without rendering legal services, is governed by the applicable law and is not governed by this rule.

Additionally, separate escrow or fiduciary accounts may be warranted when acting as a fiduciary in a business transaction or similar role.  Attorneys at times may be entrusted with funds to be safeguarded although the transaction may not relate to a lawyer and client relationship.  In those cases, attorneys may be subject to other rules, such as MCR 9.104 and MRPC 8.4(b).  While it is appropriate to place such funds in an escrow or fiduciary account, and not a client trust account, the funds must be safeguarded and not commingled with the attorney's funds nor misappropriated.

**Fiduciary Obligation.**   A lawyer must hold property or funds of others with the care required of a professional fiduciary.

**Reasonable Time for Disbursing Earned Fees.**  Disbursement of earned fees from the trust account within a period of 30 days after the client has been billed, or within 15 days after the client has been billed if the client has agreed in writing to this shortened period, is presumed to be reasonable under subrule (c).  Disbursements after 30 days may be reasonable if the client disputes the related bill or other good cause exists.

**Disputed Property or Funds.**  A third person, such as a client's creditors, may have a claim against property or funds being held by the lawyer.  A lawyer may have a duty under applicable law to protect such a third-person claim against wrongful interference by the client, and accordingly may refuse to surrender the property or funds as directed by the client.  However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third person.  The disputed portion of the funds must be held in the trust account and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration or filing an appropriate pleading or motion with the appropriate court.  The undisputed portion of the property or funds must be promptly distributed.

The lawyer should keep separate all property held in safekeeping for which the ownership is in dispute and suggest means for prompt resolution of the dispute.

**Fees Paid in Advance.**  If a lawyer-client relationship is terminated before all services are rendered, but after payment of an advance fee, the lawyer must refund any portion of the fee which has not been earned under the terms of the agreement between the lawyer and client.

So long as memorialized in a written agreement, a lawyer and a client are permitted to agree to payment of a nonrefundable retainer fee that is considered earned upon receipt and not made contingent on the future provision of specific legal services.  A lawyer is permitted to deposit unambiguously nonrefundable fees into the lawyer's operating account provided that there is a written agreement between the lawyer and the client that conforms to MRPC 1.5.  See *Grievance Administrator v Cooper*, 482 Mich 1079 (2008).

**Inability to Locate Rightful Owner.**  If the lawyer is unable to locate the rightful owner of property held for safekeeping or funds held in the lawyer's trust account after making reasonable efforts to locate the owner, the lawyer must comply with the Michigan Uniform Unclaimed Property Act, MCL 567.221, *et seq.*  It is prudent to keep records of the efforts to locate the owner.

**Payment of Operating and Personal Expenses.**  A lawyer must pay operating and personal expenses from an appropriate business or personal account.  A lawyer must avoid using a client trust account as a law firm operating account for the purpose of paying payroll, rent, and the like.  Similarly, a lawyer must avoid using a client trust account for direct payment of personal expenses.  Rather, a lawyer must promptly transfer any earned fees to an appropriate account for payment of such expenses.

~~A lawyer should hold property of others with the care required of a professional fiduciary. Securities should be kept in a safe deposit box, except when some other form of safekeeping is warranted by special circumstances.  All property which is the property of a client or a third person should be kept separate from the lawyer's business and personal property and, if funds, should be kept in one or more trust accounts.  Separate trust accounts may be warranted when administering estate funds or acting in similar fiduciary capacities.~~

~~Lawyers often receive from third persons funds from which the lawyer's fee will be paid. If there is risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid.  However, a lawyer may not hold funds to coerce a client into accepting the lawyer's contention.  The disputed portion of the funds should be kept in trust and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration.  The undisputed portion of the funds shall be promptly distributed.  A third person, such as a client's creditors, may have a just claim against funds or other property in a lawyer's custody.  A lawyer may have a duty under applicable law to protect such a third party claim against wrongful interference by the client, and accordingly may refuse to surrender the property to the client.  However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third person.~~

~~The obligations of a lawyer under this rule are independent of those arising from activity other than rendering legal services.  For example, a lawyer who serves as an escrow agent~~

8

~~is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction.~~

Rule 1.15A  <u>Lawyer </u>Trust Accounts ~~Overdraft Notification~~.

(a)  <u>Type of Account.  All client or third-person funds in connection with a representation must be deposited into a client trust account, which is either an Interest on Lawyer Trust Account (IOLTA) or non-IOLTA.</u>

    (1)  <u>"IOLTA" refers to an interest- or dividend-bearing account, as defined by the Michigan State Bar Foundation, held at an eligible and approved financial institution, from which funds may be withdrawn upon request as soon as permitted by law.  Any dividends or interest earned by an IOLTA must be paid to the Michigan State Bar Foundation.  An IOLTA must only hold client or third-person funds that cannot earn income for the client or third person in excess of the costs incurred to secure such income while the funds are held.</u>

    (2)  <u>"Non-IOLTA" refers to an interest- or dividend-bearing account held at an approved financial institution, from which funds may be withdrawn upon request as soon as permitted by law.  A non-IOLTA must be:</u>

        (A)  <u>a separate client trust account for the particular client or matter on which the net interest or dividend will be paid to the client or third person, or</u>

        (B)  <u>a pooled client trust account with subaccounting by the financial institution or by the lawyer, which provides for computation of net interest or dividend earned by each client or third person's funds and the payment of interest or dividend to the client or third person.</u>

(b)  <u>In determining whether client or third-person funds should be deposited in an IOLTA or a non-IOLTA, a lawyer must consider the following factors:</u>

    (1)  <u>the amount of interest or dividends the funds would earn during the period that they are expected to be deposited in light of</u>

        (A)  <u>the amount of the funds to be deposited;</u>

        (B)  <u>the expected duration of the deposit, including the likelihood of delay in the matter for which the funds are held; and</u>

        (C)  <u>the rates of interest or yield at financial institutions where the funds are to be deposited;</u>

      (2)    the cost of establishing and administering non-IOLTAs for the client or third person's benefit, including service charges or fees, the lawyer's services, preparation of tax reports, or other associated costs;

      (3)    the capability of the financial institution or lawyer to calculate and pay income to individual clients or third persons; and

      (4)    any other circumstances that affect the ability of the funds to earn a net return for the client or third person.

(c)    After considering the factors in subrule (b), a lawyer's good-faith decision regarding the deposit or holding of such funds in an IOLTA or non-IOLTA is not reviewable by a disciplinary body.

(d)    A lawyer must not receive interest or dividends from any client trust account.

(a)    ~~Scope. Lawyers who practice law in this jurisdiction shall deposit all funds held in trust in accordance with Rule 1.15. Funds held in trust include funds held in any fiduciary capacity in connection with a representation, whether as trustee, agent, guardian, executor or otherwise.~~

      (1)    ~~"Lawyer" includes a law firm or other organization with which a lawyer is professionally associated.~~

      (2)    ~~For any trust account which is an IOLTA account pursuant to Rule 1.15, the "Notice to Eligible Financial Institution" shall constitute notice to the depository institution that such account is subject to this rule. Lawyers shall clearly identify any other accounts in which funds are held in trust as "trust" or "escrow" accounts, and lawyers must inform the depository institution in writing that such other accounts are trust accounts for the purposes of this rule.~~

(b)    ~~Overdraft Notification Agreement Required. In addition to meeting the requirements of Rule 1.15, each bank, credit union, savings and loan association, savings bank, or open-end investment company registered with the Securities and Exchange Commission (hereinafter "financial institution") referred to in Rule 1.15 must be approved by the State Bar of Michigan in order to serve as a depository for lawyer trust accounts. To apply for approval, financial institutions must file with the State Bar of Michigan a signed agreement, in a form provided by the State Bar of Michigan, that it will submit the reports required in paragraph (d) of this rule to the Grievance Administrator and the trust account holder when any properly payable instrument is presented against a lawyer trust account containing insufficient funds or when any other debit to such account would create a negative balance in the~~

~~account, whether or not the instrument or other debit is honored and irrespective of any overdraft protection or other similar privileges that may attach to such account. The agreement shall apply to the financial institution for all of its locations in Michigan and cannot be canceled except on 120 days notice in writing to the State Bar of Michigan. Upon notice of cancellation or termination of the agreement, the financial institution must notify all holders of trust accounts subject to the provisions of this rule at least 90 days before termination of approved status that the financial institution will no longer be approved to hold such trust accounts.~~

~~(c)   The State Bar of Michigan shall establish guidelines regarding the process of approving and terminating "approved status" for financial institutions, and for other operational procedures to effectuate this rule in consultation with the Grievance Administrator. The State Bar of Michigan shall periodically publish a list of approved financial institutions. No trust account shall be maintained in any financial institution that has not been so approved. Approved status under this rule does not substitute for "eligible financial institution" status under Rule 1.15.~~

~~(d)   Overdraft Reports. The overdraft notification agreement must provide that all reports made by the financial institution contain the following information in a form acceptable to the State Bar of Michigan:~~

~~(1)   The identity of the financial institution~~

~~(2)   The identity of the account holder~~

~~(3)   The account number~~

~~(4)   Information identifying the transaction item~~

~~(5)   The amount and date of the overdraft and either the amount of the returned instrument or other dishonored debit to the account and the date returned or dishonored, or the date of presentation for payment and the date paid.~~

~~The financial institution must provide the information required by the notification agreement within five banking days after the date the item was paid or returned unpaid.~~

~~(e)   Costs. The overdraft notification agreement must provide that a financial institution is not prohibited from charging the lawyer for the reasonable cost of providing the reports and records required by this rule, but those costs may not be charged against principal, nor against interest or dividends earned on trust accounts, including earnings on IOLTA accounts payable to the Michigan State Bar Foundation under Rule 1.15. Such costs, if charged, shall not be borne by clients.~~

(f) ~~Notification by Lawyers.   Every lawyer who receives notification that any instrument presented against the trust account was presented against insufficient funds or that any other debit to such account would create a negative balance in the account, whether or not the instrument or other debit was honored, shall, upon receipt of a request for investigation from the Grievance Administrator, provide the Grievance Administrator, in writing, within 21 days after issuance of such request, a full and fair explanation of the cause of the overdraft and how it was corrected.~~

(g) ~~Every lawyer practicing or admitted to practice in this jurisdiction shall, as a condition thereof, be conclusively deemed to have consented to the requirements mandated by this rule and shall be deemed to have consented under applicable privacy laws, including but not limited to those of the Gramm-Leach-Bliley Act, 15 USC 6801, to the reporting of information required by this rule.~~

Comment:

**Review of Accounts.**  A lawyer must review the IOLTA at reasonable intervals to determine whether changed circumstances require the funds to be deposited prospectively into a non-IOLTA.

**Electronic Transfers.**  A lawyer may accept the electronic transfer of funds for an advance payment, for services rendered, or for the safekeeping of client or third-person funds if appropriate safeguards to protect confidentiality and client property are employed.

**Approved Financial Institution.**  An "approved financial institution" is a bank, credit union, or savings and loan association authorized by federal or state law to do business in Michigan, the deposits of which are insured by an agency of the federal government or an open-end investment company registered with the Securities and Exchange Commission authorized by federal or state law to do business in Michigan.  The State Bar of Michigan is authorized to approve financial institutions that have agreed to the Overdraft Notification Agreement and requirements of MRPC 1.15C.  The State Bar of Michigan has established guidelines regarding the process of approving and terminating "approved status" for financial institutions, and for other operational procedures to effectuate this rule in consultation with the Grievance Administrator.   The State Bar of Michigan must periodically publish a list of approved financial institutions.  A lawyer may not maintain a trust account at a financial institution that has not been approved by the State Bar of Michigan.

**Eligible Institution.**  An "eligible institution" is an approved financial institution that is deemed eligible to hold IOLTAs by the Michigan State Bar Foundation.  Eligibility is determined based upon factors, including reporting requirements, remittance requirements, and comparable rate requirements, set forth in the Michigan State Bar Foundation IOLTA Handbook, as adopted by the Michigan Supreme Court.  The financial institution may

charge reasonable fees on IOLTAs, including per transaction charges, per deposit charges, a fee in lieu of a minimum balance, federal deposit insurance fees, sweep fees, and a reasonable IOLTA administrative or maintenance fee.  Any allowable reasonable fees are deducted from the interest or dividends earned on each IOLTA.  Fees or charges in excess of the interest or dividends earned on the account for any month or quarter must not be taken from interest or dividends earned on other IOLTA or from the principal of the account.  The lawyer is responsible for all other operational costs to maintain an IOLTA, including but not limited to, check orders, wire transfers, and NSF charges.  These additional operational costs must not be charged to the client.

The Michigan State Bar Foundation must periodically publish a list of eligible institutions. A lawyer may not maintain an IOLTA at a financial institution that is not eligible.

[NEW] Rule 1.15B  Lawyer Trust Account Records

(a)     A lawyer has a duty to maintain ongoing and complete records of client trust accounts, for a period of five years after termination of representation, including

    (1)     for each client trust account, a record of deposits and withdrawals from the account specifically identifying the date, source, and description of each item deposited, as well as the date, the payee, and purpose of each disbursement.

    (2)     for each separate client or third person whose funds are being held in a client trust account,

        (A)     the source of all funds deposited;

        (B)     the date of each deposit;

        (C)     the names of all persons for whom the funds are or were held;

        (D)     the amount of such funds;

        (E)     the dates, descriptions, and amounts of charges or withdrawals; and

        (F)     the names of all persons or entities to whom funds were disbursed.

    (3)     copies of all documentation provided to clients or third persons showing the disbursement of funds to them or on their behalf, along with copies of those portions of client files that are reasonably necessary for a complete understanding of the financial transactions pertaining to them.

(4)     where applicable, all client trust account checkbook registers, check stubs, account statements, records of deposit, electronic transfer documents, and checks or other records of debits.

(5)     all written engagement or fee agreements with clients.

(6)     all bills rendered to clients for legal fees and expenses.

(7)     appropriate arrangements for the maintenance of the records in the event of the closing, sale, dissolution, or merger of a law practice.

(b)     Records required by this rule may be maintained by electronic, photographic, or other media provided that copies can be produced and the records are readily accessible to the lawyer.

Comment:

**Documentation.**  As used in subrule (a)(3), "documentation" includes but is not limited to accounting updates, bills, and invoices.

[NEW] Rule 1.15C  Trust Account Overdraft Notification

(a)     Scope.  Lawyers who practice law in this jurisdiction must deposit all funds held in connection with a representation in trust, IOLTA or non-IOLTA, in accordance with Rules 1.15 and 1.15A.

(b)     Requirements.  Lawyers must only hold client trust accounts in accordance with MRPC 1.15A and comply with the following:

(1)     Complete and submit to the financial institution the applicable notice to financial institution form drafted and published by the Michigan State Bar Foundation or State Bar of Michigan, which constitutes notice to the financial institution that the account is subject to this rule.

(2)     Clearly identify any accounts in which funds are held in trust as "escrow account," "IOLTA," or "non-IOLTA" and include within the name of the account the name of the lawyer or firm account holder.

(c)     Overdraft Reports.  To be an approved financial institution, a financial institution must submit to the State Bar of Michigan an overdraft notification agreement.  The overdraft notification agreement must provide that all reports made by the financial institution contain the following information in a form acceptable to the Attorney Grievance Commission:

    (1)    the identity of the financial institution;

    (2)    the identity of the account holder;

    (3)    the account number;

    (4)    information identifying the transaction item; and

    (5)    the amount and date of the overdraft and either the amount of the returned instrument or other dishonored debit to the account and the date returned or dishonored, or the date of presentation for payment and the date paid.  The financial institution must provide the information required by the notification agreement within five business days after the date the item was paid or returned unpaid.

(d)    Costs.  The overdraft notification agreement must provide that a financial institution may charge the lawyer for the reasonable cost of providing the reports and records required by this rule, but those costs may not be charged against principal, nor against interest or dividends earned on trust accounts, including earnings on IOLTAs payable to the Michigan State Bar Foundation under Rule 1.15A.  Such costs, if charged, must not be borne by clients.

(e)    Notification by Lawyers.  Every lawyer who receives notification that any instrument presented against the trust account was presented against insufficient funds or that any other debit to such account would create a negative balance in the account (overdraft notification), whether or not the instrument or other debit was honored, must, upon receipt of a request for investigation from the Grievance Administrator, comply with MCR 9.113.

(f)    Every lawyer practicing or admitted to practice in this jurisdiction will be conclusively deemed to have consented to the reporting and production requirements mandated by this rule.

*Staff Comment (ADM File No. 2022-19)*:  The proposed amendments of MRPC 1.15 and 1.15A and proposed additions of MRPC 1.15B and 1.15C reflect a revised proposal that would amend the rules governing IOLTA accounts to: modernize the rules, address gaps in the existing rules, and clarify attorneys' ethical duties related to safekeeping client or third-person property and managing trust accounts.  Many minor revisions were made to the original proposal in an effort to clarify terms or rule/comment language.  More substantive revisions included in the current proposal are:

- Proposed MRPC 1.15(a) and (e): revised to clarify that these subrules apply to property *and* funds.

- Proposed MRPC 1.15(c): revised as discussed in Justice Welch's concurring statement.

- Proposed MRPC 1.15(b): revised to clarify the reasons for which a lawyer may deposit or retain their own funds in a client trust account.

- Proposed MRPC 1.15(f) and companion comment: added to the proposal to clarify prohibition on paying certain expenses from a client trust account.

- Proposed MRPC 1.15B Comment: the original proposal contained a comment that addressed Recordkeeping. It has been removed and replaced with a comment that defines what "documentation" means for purposes of the rule.

- Proposed MRPC 1.15C(e): revised to refer to MCR 9.113 in lieu of specific language that may overlap or conflict with that rule.

The staff comment is not an authoritative construction by the Court. In addition, adoption of a new rule or amendment in no way reflects a substantive determination by this Court.

A copy of this order will be given to the Secretary of the State Bar and to the State Court Administrator so that they can make the notifications specified in MCR 1.201. Comments on the proposal may be submitted by March 1, 2025 by clicking on the "Comment on this Proposal" link under this proposal on the Court's Proposed & Adopted Orders on Administrative Matters page. You may also submit a comment in writing at P.O. Box 30052, Lansing, MI 48909 or via email at ADMcomment@courts.mi.gov. When submitting a comment, please refer to ADM File No. 2022-19. Your comments and the comments of others will be posted under the chapter affected by this proposal.

WELCH, J. (*concurring*). I support republication of the proposal to modernize and amend the ethics rules governing the use of trust accounts by private sector attorneys and the rules governing when a fee for legal services can be removed from an attorney's or law firm's trust account. I write to call attention specifically to the proposed amendments of MRPC 1.15(c) and the associated comments regarding a "Reasonable Time for Disbursing Earned Fees" and "Fees Paid in Advance." I am concerned that, as previously published, the proposed amendments of MRPC 1.15(c) were inconsistent with this Court's decision in *Grievance Administrator v Cooper*, 482 Mich 1079 (2008).

In that disciplinary matter, we held that an attorney could ethically enter into an unambiguous agreement with a client that made an advance-paid minimum fee for future legal services nonrefundable upon execution of the agreement. *Id.* at 1079. As previously published, the proposed revisions to MRPC 1.15(c) would require that any fee paid in advance of providing services must be deposited into a trust account and cannot be

transferred into an attorney's operating funds account until the client is invoiced and has had time to dispute the charges. Our decision in *Cooper* and the previously published proposed revisions to MRPC 1.15(c) would create ambiguity as to the continued permissibility of nonrefundable flat-fee agreements between attorneys and their clients.

I also believe that many practitioners would be surprised to learn that under the previously proposed rule, every advance payment made by a client pursuant to their standard flat-fee agreement would need to be deposited into the attorney's trust account. Practitioners would also likely be surprised that such flat-fee payments could not be withdrawn from the trust account until the legal services are completed and a 30-day period has passed after invoicing for those services. Attorneys who are paid in this fashion typically invoice their clients concurrently with execution of a flat-fee agreement and payment of the fee, not after the prepaid legal services have been performed. Such agreements are common in high volume practice areas, such as estate planning and criminal defense, where a one-time payment is made for future legal services.

As a final note, the previous proposal also failed to provide clarity as to "classic retainer" agreements under which an attorney accepts a fee from a client in exchange for being contractually available at any time in the future to provide legal services. Such attorneys become ethically precluded from taking on new clients with interests that conflict with the interests of the client paying the retainer. These agreements appear to be permissible under the previous proposal, but further clarity would be helpful.

While the original proposed changes were brought forth with the understandable intention of protecting the public and ensuring that unearned fees are returned to clients, I want to ensure that this Court hears from some of the solo practitioners and small-firm attorneys who will be most impacted by the changes that are being considered. It is my hope that the revised proposal more adequately addresses the modern realities of legal practice and ethical concerns for both lawyers and clients. I encourage all members of the bar to examine the proposed amendments and submit feedback to the Court to ensure that we are not overlooking any important details.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 6, 2024



Clerk