UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,              Case No. 2:24-CR-20562
                                                Honorable Brandy R. McMillion

v.

SHAWN PATRICK SMITH,

               Defendant.

_____

### GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTIONS TO EXCLUDE EXPERT TESTIMONY

COMES NOW the United States of America, by and through its undersigned attorneys, and hereby files its response in opposition to the defense motions styled as Motion to Exclude Government's Testimony of Government's Expert Witnesses and Alternatively to Request a Daubert Hearing (ECF No. 34) and Motion for Daubert Hearing Regarding the Testimony of the Government's Experts in This Case (ECF No. 35).

By these motions, the defense is essentially asking the Court to bar the government from proving an essential element of its case. Were the Court to grant these motions, the jury would have no way of knowing whether the defendant filed false tax returns for the years 2017 through 2020 in which he failed to report a

substantial portion of his gross receipts as charged in Counts One through Four of the indictment.  The Court should permit the evidence noticed by the government. See January 30, 2025, Notice as to Rhonda Pozehl (ECF No. 27) and February 14, 2025, Notice as to Kelly Williams (ECF No. 30).

## **The Jury Should Hear the Evidence of Rhonda Pozehl**

The defense had already moved (ECF No. 19) to exclude the testimony of the government's expert Rhonda Pozehl.  The government filed its opposition (ECF No. 28) and the defense filed a reply (ECF No. 29).  Accordingly, the issue of the admissibility of the testimony of Ms. Pozehl would appear to have been fully briefed.  As before, the gist of the defendant's current opposition to the testimony of Ms. Pozehl appears[1] to concern relevance: "With respect to Ms. Pozehl's testimony, it is irrelevant and will confuse the jury, as more fully explained in the motion to exclude her testimony." ECF No. 35 PageID.234.

As the government explained at length in its earlier briefing on this issue (see ECF No. 28, PageID.167-171), the testimony of Ms. Pozehl will assist the jury

---

[1] Defendant's papers also contain a confusing citation to a case to the effect that violations of the Michigan Rules of Professional Conduct (MPRC) do not give rise to a cause of action for damages. See ECF No. 34, PageID.231.  The government is not claiming that the defendant violated the MPRC.  As previously explained in the government's opposition filed January 31, 2025, "Ms. Pozehl will not testify about any act, any crime, or any wrong on the part of defendant Smith.  Indeed, the defendant appears to have handled his deposits of settlements and earned and unearned fees in keeping with the Michigan Rules of Professional Conduct." ECF No. 28, PageID.165.
.

in this matter because a substantial portion of the funds at issue in this case were initially deposited by the defendant into his IOLTA and later moved into his personal and business bank accounts.  Most jurors will be unfamiliar with IOLTAs and would benefit from an explanation of how they are used to keep funds held for third parties.

The defendant's assertion that the testimony of Ms. Pozehl is irrelevant is hard to square with his assertion that

> It is likely that the sole material, disputed matter that the jury will need to decide in order to reach a verdict in this case is specific to attorneys: When do the monies received by the Defendant from his clients turn into income for tax purposes? ECF No. 34, PageID.223

To the contrary, the testimony of Ms. Pozehl will illuminate the very issue that the defendant calls "the sole material, disputed matter" for the jury.

Generally, Ms. Pozehl will address the issue of when funds flowing into a law office become the property of the lawyer.  For example, her Opinion No. 1 (ECF No. 18-2, PageID.87) states that "unearned attorneys fees are supposed to be deposited into an IOLTA until they are earned."  As explained below, the analysis of the Revenue Agent does not count funds deposited into the defendant's IOLTA as gross receipts.  Consistent with the evidence of Ms. Pozehl, the Revenue Agent includes funds in gross receipts only when they are transferred out of the defendant's IOLTA and into his business and personal accounts.

3

In a related vein, Ms. Pozehl's Opinion No. 3 states "[t]he lawyer must promptly move fees once earned from the lawyer's trust account to his or her business operating account or personal account."  As detailed below, the government's proof will show that the defendant moved more money out of his IOLTA and into his personal bank accounts in 2016, 2017 and 2019 than he reported as gross receipts on his tax returns.  Ms. Pozehl's testimony that, under the MRPC, such transfers should take place only once the attorney has earned his fee will be highly relevant to the issue before the jury about whether Mr. Smith should have reported transfers of that type as gross receipts.

Ms. Pozehl's testimony will be all the more helpful to the jury in light of the defendant's unsupported claims that "[i]t does not matter when the attorney receives the funds or what bank account in which he puts it."  ECF No. 34, PageID.225.  To the contrary, Ms. Pozehl's testimony will make it clear that, under the MRPC, the account into which an attorney should deposit funds depends upon whether those funds belong to him or to his client. For example, her Opinion No. 5 states "[f]unds paid to the lawyer in advance based on a fixed or flat fee agreement must be deposited into the lawyer's trust account until the lawyer has performed the contracted services." In a related vein, Ms. Pozehl's Opinion No. 6 states "[u]nless a written retainer agreement provides that a fee is earned upon receipt, payments

4

from clients may only be deposited into the attorney's personal account or business operating account after they are earned by the attorney." Likewise, her Opinion No. 7 states "A lawyer must not deposit funds belonging to clients or third parties into his personal account or business operating account."

The defendant correctly asserts that "the attorney's receipt of funds does not, in itself, make the funds income[2] to the attorney." ECF No. 34, PageID.224. Despite this admission, he still seeks to exclude the testimony of Rhonda Pozehl that bears on the very issue of when funds become the property or gross receipts of a lawyer or law firm.

The defendant is wrong on this point.  Ms. Pozehl's testimony "'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" In re Scrap Metal Antitrust Litigation, 527 F.3d 517, 528–29 (6th Cir. 2008) (quoting Fed.R.Evid. 702.)  Indeed, expert testimony similar to the proposed evidence of Ms. Pozehl is routinely admitted in criminal and civil cases.  See e.g., United States v. Cohen, 887 F.3d 77 (1st Cir. 2018) (no abuse of discretion in admitting expert witness for the government to explain rules governing IOLTA accounts); Strayer v. Bare, 2011 WL 13214340, at *2 (M.D.Pa., 2011) (admitting expert testimony on the proper handling of client trust accounts under the rules of attorney

---

2 Although the defendant refers to income throughout his motions, he is actually charged with failing to accurately report gross receipts.  Income consists of gross receipts minus expenses.

conduct); In re Brown Medical Center, Inc., 2017 WL 2633533, at *2 (S.D.Tex., 2017) (expert testimony regarding use of IOLTA permitted under Rule 702 and Daubert); Reis v. Barley, Snyder, Senft & Cohen LLC, 2008 WL 2653670, at *8 (E.D.Pa., 2008) (legal ethics expert's opinions and conclusions could assist the trier of fact in making its determinations); Wyndham Vacation Ownership, Inc. v. Sussman, 2021 WL 5177339, at *3 (M.D.Fla., 2021) (testimony of legal ethics expert admissible under Daubert).

Ms. Pozehl should be permitted to testify at the trial of this case because her evidence will help the jury understand when the defendant's fees were earned and when funds became his property.  Such evidence will be crucial to the ability of the jury to determine whether or not the defendant failed to report a substantial portion of the gross receipts of his law firm.

### The Jury Should Hear the Evidence of Revenue Agent Kelly Williams

As explained in its Notice Regarding Testimony of Kelly Williams (ECF No. 30), the government will call Internal Revenue Service (IRS) Revenue Agent Kelly Williams as a witness at the trial of this case.  As noted therein, the government intends to offer Ms. Williams as a summary witness, rather than as an expert witness pursuant to Fed. R. Evid. 702.  However, to the extent that the testimony of Ms. Williams may be construed as expert testimony under that rule,

the government has given notice, out of an abundance of caution, of her testimony

pursuant to Fed. R. Crim. P. 16(a)(1)(G).

The defendant's motions to exclude any expert testimony by Ms. Williams

ask the Court to accept defendant's unsupported and self-serving interpretation of

the evidence in order to preclude the jury from hearing the well-reasoned

testimony of a very experienced and highly credentialed IRS Revenue Agent. As

discussed below, Revenue Agent Williams' expected testimony is the product of

reliable principles and methodology. Given the nature of this case, her testimony is

also highly relevant to the issue of whether or not Smith's tax returns were false as

charged.

<u>Testimony of IRS Revenue Agents is Standard in Criminal Tax Cases</u>

As a threshold matter, the Court should note that this defendant requests the

exceptional relief of excluding testimony of a type that is standard in criminal tax

trials. IRS employees like Ms. Williams are routinely permitted to testify as

summary witnesses and/or expert witnesses at criminal tax trials. <u>See</u>, <u>e.g</u>., <u>United</u>

<u>States v. Mohney</u>, 949 F.2d 1397, 1404 (6th Cir. 1991) (two IRS employees who

testified as summary witnesses properly present in the courtroom during trial so

that they could calculate the amount of gross income and/or gross receipts

underreported on defendant's tax returns); <u>United States v. Sabino</u>, 274 F.3d 1053,

1067 (6th Cir.2001) (proper for IRS witness to testify about tax calculation based on evidence at trial); <u>United States v. Monus</u>, 128 F.3d 376, 386 (6th Cir.1997) (expert testimony of IRS Revenue Agent permitted to assist jury to determine a fact at issue); <u>United States v. Bender</u>, 2014 WL 11309793, at *1–2 (E.D. Mich., 2014) (this Court permitting an IRS Revenue Agent as a summary witness).

<u>The Miele Tax Court Case Is Inapposite</u>

The defendant cites (<u>see</u> ECF No. 34, PageID.224) the Tax Court case of <u>Miele v. Commissioner of Internal Revenue</u> as though that case shows the government is wrong in this case. 72 T.C. 284, 285–86 (Tax Court 1979). However, <u>Miele</u> does not help Smith.  As explained below, <u>Miele</u> concerned a dispute where the IRS sought to count funds that were *still in* an attorney trust account as gross income for particular years.  Whereas, in the case of Smith, the Revenue Agent only considers funds as part of gross receipts *once Smith withdraws them from* his trust account.

<u>Miele</u> dealt with a dispute regarding the classification of funds kept in a trust account.  The attorneys in <u>Miele</u> kept "client advances, including advances for both future client costs and future legal services" in a "trustee account." <u>Id.</u>  They "provided an accounting of each client's funds by maintaining a ledger card reflecting all client transactions." <u>Id.</u>  "When a case was closed, the firm would

8

transfer the earned portion of the prepaid legal fees held in the trustee account to the general partnership account; the unearned portion was refunded to the client." Id.

However, the attorneys in Miele did not transfer fees from the trust account into their partnership account in the months of November and December.  Id. Because of this practice, "fees were not always included in income in the year earned and therefore otherwise available to the firm."  Id.  The IRS audited the attorneys and counted as gross income fees they had earned in one year, but did not report until the following year, which was when they moved the money into their partnership account.  Id.

The Tax Court noted "[e]ven though the law firm is not taxable on receipt of the payments from the clients, it may be in constructive receipt of amounts held in the trustee account at the end of the year." Id.  The court noted that one of the attorneys "testified that $35,623.75 of the 1972 ending balance in the trustee account was earned in 1972 but not included in income until 1973, the year transferred to the law firm's general account."  On that record, the Tax Court held that the law firm "constructively received this amount in 1972." Id. at 290-91. Notably, the Miele court relied on the Pennsylvania Code of Professional Responsibility in finding that "the law firm preserved the identity of their client's

funds and property through segregation and accounting measures." Id. at 285.

As described below, the gross receipts computed by the Revenue Agent in this case do not include any deposits into the defendant's IOLTA. Therefore, this case is different from the case of Miele where the IRS sought to count certain monies constructively received by the attorneys and *kept in their trust account* as gross income. Thus, the claims of the defense to the effect that Miele contradicts the analysis of Ms. Williams are baseless.

> The Testimony of Ms. Williams is Admissible Under Rule 702 and Daubert

As the Supreme Court made clear in Daubert v. Merrell Dow Pharmaceuticals, Inc., the trial court is empowered to act as a "gatekeeper" to exclude only expert evidence that is irrelevant or "unreliable" under Fed. R. Evid. 702. 509 U.S. 579 at 596–97(1993); In re Northwest Airlines Corp. Antitrust Litig., 197 F.Supp.2d 908, 914 (E.D. Mich. 2002) (a court "must remain mindful of its limited gatekeeping role" under Rule 702). The court's role is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

The district court's function as a gatekeeper is "to determine whether the

principles and methodology underlying the testimony itself are valid," United States v. Bonds, 12 F.3d 540, 556 (6th Cir. 1993)—it is "not to second guess the validity of conclusions generated by otherwise valid methods, principles, and reasoning." Pride v. BIC Corp., 218 F.3d 566, 577 (6th Cir. 2000).

A district court's review under Daubert is not intended to serve as a replacement for the adversary system. Burgett v. Troy-Bilt LLC, 579 F. App'x 372, 376 (6th Cir. 2014). Indeed, the appropriate means for attacking evidence is through vigorous cross-examination, presentation of contrary evidence, and careful instruction by the judge to the jury on the applicable burden of proof. Daubert, 509 U.S. at 596; Any challenges that go merely to the weight, and not the admissibility, of proposed expert testimony must be left for the trier of fact to resolve. Cason-Merenda v. Detroit Med. Ctr., 2013 WL 1721651, at *5–6 (E.D. Mich. Apr. 22, 2013).

Revenue Agent Williams' calculations regarding gross receipts are based on sound methodology and will assist the jury in assessing whether or not the defendant falsely underreported the gross receipts of his firm on his tax returns. Ms. Williams calculated the defendant's gross receipts using the bank deposits method of proof. The IRS often uses this method of proof to determine the gross receipts of businesses and professionals, including lawyers, with a large number of

transactions or clients. The bank deposits method has "received consistent judicial approval." United States v. Morse, 491 F.2d 149, 151 (1st Cir. 1974).  This method of proof has been accepted by the Sixth Circuit. See United States v. Moody, 339 F.2d 161, 162 (6th Cir. 1964). The bank deposits method of proof has also been accepted in many other circuits.  See, e.g., United States v. Slutsky, 487 F.2d 832, 840 (2d Cir. 1973); United States v. Conaway, 11 F.3d 40, 43-44 (5th Cir. 1993)(regarding income from defendant's law practice); United States v. Ludwig, 897 F.2d 875, 878 (7th Cir. 1990); United States v. Abodeely, 801 F.2d 1020, 1023 (8th Cir. 1986); United States v. Stone, 770 F.2d 842, 844 (9th Cir. 1985); United States v. Mounkes, 204 F.3d 1024, 1028 (10th Cir. 2000).

The bank deposits method requires the government to establish that:

1.   The taxpayer was engaged in a business or income producing activity from which the jury can infer that the unreported income arose;

2.   Periodic and regular deposits of funds were made into accounts in the taxpayer's name or over which the taxpayer had dominion and control;

3.   An adequate and full investigation of those accounts was made in order to distinguish between income and non-income deposits; and

4.   Unidentified deposits have the inherent appearance of income, e.g., the size of the deposits, odd or even amounts, fluctuations in amounts

corresponding to seasonal fluctuations of the business involved, source of checks deposited, dates of deposits, accounts into which deposited, etc.

See Gleckman v. United States, 80 F.2d 394 (8th Cir. 1935). United States v. Abodeely, 801 F.2d 1020, 1023 (8th Cir. 1986); United States v. Stone, 770 F.2d 842, 844 (9th Cir. 1985); United States v. Morse, 491 F.2d 149, 152 (1st Cir. 1974); United States v. Slutsky, 487 F.2d 832, 841-42 (2d Cir. 1973)

In a case where the government is considering cash deposits to be gross receipts, the government must establish a beginning balance for cash-on-hand. See United States v. Slutsky, 487 F.2d 832, 842 (2d Cir. 1973). However, as here, where the government has excluded all cash deposits from its computation of gross receipts, there is no requirement to establish the defendant's cash balance. United States v. Riggen, 51 F.3d 283 (9th Cir. 1995) (unpublished).

Under the bank deposits method, the government is required to investigate any reasonable leads provided by the defense that would show that the deposits were non-taxable. United States v. Conaway, 11 F.3d 40, 43-44 (5th Cir. 1993); United States v. Ludwig, 897 F.2d 875, 882 (7th Cir. 1990); United States v. Boulet, 577 F.2d 1165, 1169 (5th Cir. 1978); United States v. Slutsky, 487 F.2d 832, 843 n.14 (2d Cir. 1973). Leads furnished by a defendant must be both timely and reasonably susceptible of being checked. Conaway, 11 F.3d at 43-44 ("We

cannot reasonably expect the government to find secret cash hoards without taxpayer assistance"); <u>United States v. Normile</u>, 587 F.2d 784, 786 (5th Cir. 1979) ("[t]he government was not obliged to bay down rabbit tracks"); <u>United States v. Procario</u>, 356 F.2d 614, 617 (2d Cir. 1966) (leads furnished "on the eve of indictment" were too late).

In this case, Ms. Williams reviewed the defendant's bank transactions, determined the total deposits that the defendant made into all of his bank accounts each year, and subtracted non-taxable deposits such as deposits to his IOLTA, interest, transfers between his personal/business bank accounts, and other items that do not have the appearance of income. The remainder, which constitutes the defendant's gross receipts, includes the defendant's withdrawals from his IOLTA, credit card payments that he received into his personal account, and checks from clients that he deposited directly into his personal and business operating accounts.

Many of these checks deposited into the defendant's personal account bear further indicia that they are gross receipts, because they are payable to the defendant's law firm or the memorandum field notes that they are payments for legal fees, or for an attorney. Ms. Williams deducted from the gross receipts any payments from the defendant's personal and business operating account to clients, former clients, and other attorneys to arrive at an adjusted gross receipts figure.

The government will support its bank deposits analysis through the testimony of several of the defendant's clients. These clients will testify that payments they made (that were deposited into the defendant's personal and business operating accounts) were in return for legal services. Many of these clients executed retainer agreements with the defendant stating that the fees they paid the defendant were non-refundable.  The government will present examples of such agreements at trial.

In keeping with the bank deposits method of proof, the government attempted to obtain leads concerning potential non-taxable deposits in the defendant's bank accounts. As Ms. Pozehl will testify, MRPC rules prohibit a lawyer from depositing into his personal and business operating accounts funds in which a client or third party has an interest. Still, the government sought information to determine whether anyone other than the defendant had an interest in the funds deposited into those accounts. On February 9, 2024, the government issued a grand jury subpoena to the defendant requiring him to produce for the period January 1, 2015 through the present "Any and all records required to be maintained under Michigan Rule of Professional Conduct 1.15(b); that is, records pertaining to funds or property in which a client or third person has or had an interest received in connection with a representation."  See Exhibit A to

Defendant's Motion in Limine to Exclude Expert Testimony (ECF No. 19).  The defendant provided no records in response to the subpoena.

Appendix A contains a draft of an exhibit summarizing the gross receipts analysis of Revenue Agent Williams. Ms. Williams determined that the defendant received adjusted gross receipts of approximately $2.7 million for the years 2016 through 2020 while the defendant reported only about $1.7 million during that period. Specifically, the defendant failed to report more than $1 million in gross receipts for these five years.

Tellingly, for the years 2016, 2017 and 2019, the defendant reported lower total annual gross receipts on his tax returns than the total amounts the withdrew from his IOLTA in those years. In addition, Ms. Williams determined that the defendant received adjusted gross receipts of more than $400,000 in both 2021 and 2022, years for which the defendant did not file a federal income tax return.

The foregoing explanation makes clear that the gross receipts analysis of Revenue Agent Williams is well-supported and consistent with the bank deposits method of proof.  Accordingly, her methodology with regard to Smith's unreported gross receipts is reliable and should not be excluded by the Court.

It is axiomatic that admissible expert testimony "must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact

in issue.'" In RE Scrap Metal, 527 F.3d 528 (quoting Rule 702).  In this criminal

tax trial, Ms. Williams' testimony will be relevant, indeed essential, to the jury's

determination of whether the 2017 to 2020 Form 1040 Individual Income Tax

Returns of the defendant were materially false, and whether the defendant had

sufficient gross receipts in 2021 and 2022 to require him to file tax returns for

those years.

### No Daubert Hearings Are Necessary

The Court may use its discretion to determine whether to hold a hearing, if

the Daubert inquiry can be resolved on the submissions from the parties alone.

Greenwell v. Boatwright, 184 F.3d 492, 498 (6th Cir. 1999)("[a]lthough the trial

court is not required to hold an actual hearing to comply with Daubert, the court is

required to make an initial assessment of the relevance and reliability of the expert

testimony"); United States v. Smith, 645 F.Supp.3d 735, 738 (N.D.Ohio,

2022)("trial courts are not required to hold evidentiary hearings to assess the

relevance and reliability of expert testimony if the record contains sufficient

information to permit a court to decide a Daubert motion.")  In this case, the Court

has had extensive briefing from the parties regarding the relevance and reliability

of the testimony of the government's proposed experts.  No hearing will be

necessary for the Court to make its initial assessment of admissibility.

<u>**Conclusion**</u>

In light of the foregoing, the Court should deny the defendant's Motion to

Exclude Government's Testimony of Government's Expert Witnesses and

Alternatively to Request a Daubert Hearing (ECF No. 34) and his Motion For

Daubert Hearing Regarding The Testimony of the Government's Experts in this

Case (ECF No. 35).

Dated: March 31, 2025

> Respectfully submitted,
>
> KAREN E. KELLY
> Acting Deputy Assistant Attorney General
> Department of Justice, Tax Division
>
> By: <u>/s/ Jeffrey A. McLellan</u>
> JEFFREY A. MCLELLAN
> Trial Attorney
> U.S. Department of Justice, Tax Division
> P.O. Box 972
> Washington, DC 20044
> Telephone: (202) 514-5181
> Jeffrey.A.McLellan@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will notify counsel of record.


<u>/s/ Jeffrey A. McLellan</u>
JEFFREY A. MCLELLAN
Trial Attorney, Tax Division
U.S. Department of Justice

19